IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEXANDER LEES,

      Plaintiff,                        No. 2:08-cv-0196 CKD P

      vs.

T. FELKER, et al.,

      Defendants.             ORDER

_____/

I. Introduction

      Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the original complaint filed January 28, 2008. (Dkt. No. 1 ("Cmplt.").) The remaining five defendants are Brewer, Norman, Passwaters, Priolo, and Weeks. (See Dkt. No. 112 at 1-2, summarizing procedural history.) The parties have consented to this court's jurisdiction. (Dkt. Nos. 6, 71.)

      Plaintiff claims in an unverified complaint that in 2006 defendant Brewer, a correctional lieutenant, directed officers to destroy plaintiff's personal property and to handcuff plaintiff tightly in retaliation for his complaints about his July 2006 placement in what he labels an "illegal program" at High Desert State Prison. (Cmplt., ¶¶ 18-19, 25.) Plaintiff also claims that on August 12, 2006, defendant Priolo assaulted him with pepper spray and by kicking him,

1

again in retaliation for his complaints. (Id., ¶¶ 23, 36.) On February 26, 2007, defendants Norman, Passwater, and Weeks allegedly assaulted plaintiff after he complained about a cell search and made him walk barefoot a quarter of a mile in the snow. (Id., ¶ 24; see Dkt. No. 70 at 1-2 (order and findings and recommendations, summarizing allegations).)

Pending before the court is defendants' March 30, 2012 motion for summary judgment. (Dkt. No. 138.) After the court issued notice on July 13, 2012 pursuant to Woods v. Carey, No. 09-15548 (9th Cir. July 6, 2012), plaintiff filed an opposition to defendants' motion on September 12, 2012. (Dkt. Nos. 143, 150.) Defendants filed a reply on September 20, 2012. (Dkt. No. 152.)

For the following reasons, the court will grant defendants' motion for summary judgment.

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See <u>id.</u> at 322. "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

   The court "is not required to comb through the record to find some reason to deny a motion for summary judgment."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001).  Instead the "party opposing summary judgment must direct the Court's attention to specific triable facts."  S.Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003).  Statements in a brief, unsupported by the record, cannot be used to create an issue of fact.  Barnes v. Independent Auto Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

   On July 25, 2008 and again on July 12, 2012, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. Nos. 16, 143.)  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Woods v. Carey, No. 09-15548 (9th Cir. July 6, 2012).

III.  Facts

   As a preliminary matter, the court notes that when a complaint is verified under penalty of perjury, it has the effect of an affidavit to oppose summary judgment "to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'"  Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996).  Here, as plaintiff's complaint is unverified, the court cannot consider the allegations in this pleading as supplementing his opposition to

defendant's motion. See Draper v. Harris, 2005 WL 3020052, at *4 (E.D. Cal. Nov. 9, 2005) (same), citing Rule 56(e) of the Federal Rules of Civil Procedure. As plaintiff's opposition to summary judgment does not cite to particular record materials or show how any such materials establish the presence of a genuine dispute of fact, the court will deem the facts in the record as undisputed for purposes of the motion. See Hazeltine v. Montoya, 2012 WL 761242, at *2 (E.D. Cal. Mar. 7, 2012) (deeming facts in the record undisputed pursuant to Rule 56(e)).

During the relevant period, Lees was housed at High Desert State Prison (HDSP) following his conviction for first and second degree murder, and shooting at an inhabited dwelling. (Dkt. No. 139 (Defendants' Undisputed Facts, or DUF[1]) 1-2.) Defendants Priolo, Passwaters, Norman, and Weeks are correctional officers who were assigned to HDSP during that time. Defendant Brewer is a correctional lieutenant also assigned to HDSP. (DUF 3-4.)

In July 2006, the Classification Committee at HDSP recommended that Lees be placed in the institution's Behavior Management Unit (BMU) based on Lees' repeated failure to comply with prison regulations. The BMU was designed to provide alternative general population housing and programming for inmates deemed program failures. (DUF 4-5.)

When the Committee advised Lees that he was being placed in the BMU in an effort to correct his conduct, Lees became argumentative, telling the Committee members that he hoped they "get colon cancer and die." (DUF 8.) Lees also threatened the Committee, stating that he would do something to prevent his placement into the BMU program. He stated: "The hell with BMU, just give me the SHU term. I won't go to the BMU." (Id.)

A. August 2006 Incident (Priolo)

Lee was placed in the BMU on July 27, 2006. (DUF 9.) A few weeks later, on August 12, 2006, despite being repeatedly ordered to get off the upper tier of the housing unit and return to his cell, Lees refused to do so. (DUF 11-12.) Defendant Priolo arrived in the section

---

[1] Citations to Defendants' Undisputed Facts incorporate by reference the underlying record materials. (See Dkt. No. 139.)

5

along with another officer and told Lees to return to his cell. Lees refused. Priolo ordered Lees to turn around and submit to handcuffs. Lees again refused. Priolo ordered Lees to get on the ground, but Lees made no attempt to comply. Priolo sounded his alarm and discharged his can of pepper spray onto Lees' head and torso. Lees then got on the ground and was placed in restraints and escorted out of the building.[2]

Lees was decontaminated and examined by medical staff, who noted no injuries other than exposure to pepper spray. (DUF 13-14.)

B. <u>February 2007 Incident (Weeks, Passwater, Norman)</u>

On February 26, 2007, while being escorted back to his cell following a cell search, Lees refused to enter his cell, asking to speak with the sergeant. Defendants Weeks and Passwaters then escorted Lees to the section shower to await the sergeant. When Weeks opened the shower door, Lees pulled away and tried to twist his upper body from the officer's grasp. Weeks maintained control and, using his weight and holds, was able to get Lees on the ground. (DUF 24.)

Weeks yelled for Lees to "get down," and then activated his alarm. Passwaters maintained control of Lees' legs until responding staff arrived. Non-defendant Officer Sanchez placed restraints on Lees' legs, and Lees was then escorted to the program office by Norman and another officer. Lees was then placed inside the holding cell outside the program office. (DUF 25.)

---

[2] In a statement attached to the unverified complaint, inmate Ornelas states that, on August 12, 2006, he observed Priolo spray Lees with Mace and kick him while he was lying on his stomach on the ground. (Cmplt. at 47.) In another attached statement, inmate Whitehall states that he saw Priolo spray Lees with pepper spray and then proceed to kick him multiple times. (<u>Id.</u> at 50.) However, as these exhibits are not properly authenticated, the court may not consider them in evaluating defendants' motion. <u>See</u> <u>Hal Roach Studios v. Feiner</u>, 896 F.2d 1524, 1550 (9th Cir. 1989) ("It is well established that unauthenticated documents cannot be considered on a motion for summary judgment."); <u>see also</u> <u>King v. Aliyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (pro se litigants must follow the same rules of procedure that govern other litigants).

Weeks sustained an abrasion to his left finger. Lees, who was medically examined, complained of neck, shoulder, and back pain, but the only injury Lees sustained was an abrasion to his left knee. No other injuries were noted. (DUF 26.) Lees was charged with resisting staff. (DUF 27.)

### C. Property Claim (Brewer)

Inmates housed in the BMU are only allowed certain listed property. (DUF 7.) When Lees was placed into the BMU on July 27, 2006, he signed a property sheet that lists his allowable property as an address book, miscellaneous legal papers, stamps, and a bible. (DUF 9.)

On November 8, 2006, a property list shows that Lees' non-allowable property consisted of two tubes of toothpaste, a soap dish, seven deodorant products, seventeen books, various items of clothing, two toothbrushes, a comb, an ace bandage, fingernail clippers, a wash cloth, personal papers, and letters. Lees' property was confiscated and stored pursuant to policy. (DUF 18.)

### D. Removal from BMU

During Lees' time in the BMU, he received several counseling chronos and disciplinary violations. (DUF 10.) On March 15, 2007, Lees was returned to Administrative Segregation as a program failure for receiving numerous rules violations while in BMU. (DUF 28.) On August 3, 2007, Lees was charged with indecent exposure. (DUF 31.) On January 16, 2008, the Classification Services Representative endorsed Lees' transfer to CSP-Corcoran to serve an indeterminate SHU term. However, Lees was required to first serve a nine-month determinate SHU term, after being found guilty of indecent exposure. (DUF 33.)

IV. Discussion

A. Excessive Force

Plaintiff claims that defendants Priolo, Weeks, Norman, and Passwaters used excessive force against him in violation of the Eighth Amendment in incidents that took place in August 2006 and February 2007, respectively. (Cmplt., ¶¶ 18, 24, 36.)

7

The Eighth Amendment prohibits cruel and unusual punishment. "[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitely v. Albers, 475 U.S. 312, 319 (1986). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, ––– U.S. –––, –––, 130 S.Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9, (1992)) (internal quotations omitted).

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. As the Supreme Court explained in Wilkins:

> The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' . . . This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. '[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation.' The extent of injury may also provide some indication of the amount of force applied.

130 S.Ct. at 1178-1179 (some internal citations omitted).

As to the August 2006 incident involving defendant Priolo, defendants argue that the use of force was reasonable, given that plaintiff had a history of behavioral problems and refused to follow orders. Defendants point out that, aside from the effects of exposure to pepper spray, plaintiff suffered no injuries as a result of this incident. (Dkt. No. 138 at 13-16.)

As to the February 2007 incident involving defendants Weeks, Passwaters, and Norman, defendants similarly argue that the use of force was proportional to plaintiff's actions as he resisted defendants' efforts to restrain him. The record establishes that the only injury plaintiff sustained was an abrasion to his left knee. (Id.)

\\\\\

1    In opposition to summary judgment, plaintiff asserts that defendants were motivated by racism to use excessive force against him.  As to the August 2006 incident, he asserts that "there was no need for force" and Priolo "prematurely sprayed" him in the face with pepper spray.  (Dkt. No. 150 at 8-9.)  However, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  <u>S.A. Empresa De Viacao Aerea Rio Grandense, v. Walter Kidde & Co.</u>, 690 F.2d 1235, 1238 (9th Cir. 1982).

The court finds no genuine dispute of fact as to whether defendants' use of force "was applied in a good-faith effort to maintain or restore discipline."  Wilkins, 130 S.Ct. at 1178. Accordingly, defendants are entitled to summary judgment on this claim.

B.  Retaliation

Plaintiff asserts that he "diligently litigated against" the "illegal" program at HDSP in which he was placed.  (Cmplt., ¶ 18.)  He similarly claims that he "dare[d] challenge the illegaility of HDSP's BMU program."  (Id., ¶ 21.)  Plaintiff also alleges that he filed a "property complaint" and "complain[ed] of a cell search."  (Id., ¶¶ 23, 24.)

Plaintiff claims that the August 2006 incident involving defendant Priolo constituted unlawful retaliation for plaintiff's protected activities.  (<u>Id</u>., ¶¶ 23, 36.)  He also claims that defendant Brewer ordered officers to tightly handcuff plaintiff and destroy certain items of his personal property in retaliation for such activities.  (Id., ¶¶ 18-19, 25.)

To establish a First Amendment retaliation claim, plaintiff must show: (1) an adverse action against him; (2) because of; (3) his protected conduct, and that such action; (4) chilled his exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Prisoners alleging retaliation claims must demonstrate that: (1) prison officials retaliated against them for exercising their constitutional rights; and (2) the retaliation did not advance legitimate penological interests, such as the preservation of institutional order, discipline, and security. Barnett v. Centoni, 31 F.3d 813, 316 (9th Cir. 1994).  Even if an inmate shows that the

defendants' action was retaliatory, the inmate's retaliation claim still fails unless he produces significant probative evidence demonstrating that the retaliatory action did not advance a legitimate penological interest. Id. at 815–16. "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the [retaliatory] conduct [at issue]." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.1995).

Defendants argue that the evidence shows that defendants' actions were not motivated by plaintiff's protected conduct, but served legitimate institutional goals of maintaining safety and security. Defendants further assert that, as discussed above, no defendant used excessive force against plaintiff, and that plaintiff has adduced no evidence that any defendant knew of plaintiff's grievances and complaints.

In his opposition to the motion, plaintiff argues that, because defendants' actions were "motivated by racism," these actions were retaliatory in nature. (Dkt. No. 150 at 3.) Even if plaintiff were to produce evidence to this effect, which he has not, it would not raise a genuine dispute of fact as to whether defendants violated his First Amendment rights under the standard set forth in Rhodes. Moreover, as noted above, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." S.A. Empresa, supra, 690 F.2d at 1238. In sum, plaintiff has failed to present any evidence supporting his retaliation claims. Thus defendants are entitled to summary judgment on these claims.

C.  Property Claim

Plaintiff alleges that defendant Brewer unlawfully ordered officers to destroy certain items of his personal property. (Cmplt., ¶¶ 19, 39.)

The Due Process Clause protects prisoners from being deprived of their property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither negligent or "unauthorized intentional deprivations of property gives rise to a violation of the Due Process Clause if the state provides an adequate post-deprivation remedy." Hudson v. Palmer,

468 U.S. 517, 533 n. 14 (1983).

      Based on the allegations, the court understands plaintiff to claim an unauthorized, intentional deprivation of his property. For such a claim, the state provides an adequate post-deprivation remedy that can provide compensation for property loss. See Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir.1994) (California law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't.Code §§ 810–895); see also Johannes v. County of Los Angeles, 2011 WL 6149253, *17 (C.D. Cal. April 8, 2011) (granting summary judgment for defendants where plaintiff claimed defendants unlawfully took personal property from his cell). Defendants are therefore entitled to summary judgment on this claim.

V. <u>Conclusion</u>

      Accordingly, IT IS HEREBY ORDERED THAT defendants' March 30, 2012 motion for summary judgment (Dkt. No. 138) is granted.

Dated: September 21, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
lees0196.sj